Dennis W. MALLOY, Applicant–
Appellant,

v.

STATE of Iowa, Respondent–Appellee.

No. 93–1137.

Court of Appeals of Iowa.

Dec. 14, 1994.

Crystal L. Usher of White & Johnson, P.C., Cedar Rapids, for appellant.

Bonnie J. Campbell, Atty. Gen., Bridget A. Chambers, Asst. Atty. Gen., Denver D. Dillard, County Atty., and Scott C. Peterson, Asst. County Atty., for appellee.

Considered by SACKETT, P.J., and HABHAB and HUITINK, JJ.

SACKETT, Presiding Judge.

Applicant-appellant Dennis W. Malloy appeals following the trial court's denial of his application for postconviction relief. Malloy, convicted of second-degree sexual abuse of his stepdaughter, contends his trial and appellate attorneys did not give him effective assistance. Malloy advances a deposition of

an expert should have been introduced at his trial and parts of a videotape should not have been introduced in his case. We affirm.

Malloy had a jury trial. His stepdaughter, then thirteen, testified from the time she was ten Malloy had sexually abused her, including having sexual intercourse with her on a number of occasions. After the alleged abuse was reported, the stepdaughter was examined by Dr. Elizabeth Opdebeeck at the Child Protection Center at St. Luke's Hospital. Opdebeeck testified, at the time of the physical examination, she observed physical signs consistent with sexual abuse. Opdebeeck found the stepdaughter's hymen intact and did not see any scarring of the hymen. She noted the hymenal orifice was enlarged and the stepdaughter had a lax pubococcygeus muscle. Opdebeeck admitted the laxity or nonlaxity of the pubococcygeus muscle was a subjective finding and there were not medical standards used to determine the degree of laxity necessary to establish whether or not sexual abuse had occurred.

Prior to trial, Malloy's trial counsel, that he now alleges was not effective, took the deposition of Dr. David L. Ingram. Ingram is a professor in the Pediatric Department of the University of North Carolina and the Chief Medical Examiner for the Division of Health Services of the Department of Human Services. Ingram regularly examines children and is in charge of overseeing another pediatrician who regularly examines children to determine if they have been sexually abused. Ingram testified there were no standards for determining, with any medical certainty, if a child who was postpubertal, which Malloy's stepdaughter was, was a virgin. Ingram did not feel any weight could be given to vaginal or hymenal opening size or to the laxity of the pubococcygeal muscle. The deposition was not entered as evidence at trial.

At trial, Malloy's stepdaughter testified she had waited in making her report of sexual abuse because she was afraid of Malloy. Malloy's trial counsel sought to impeach her testimony by showing a portion of a videotape of an interview with the stepdaughter at the Child Protection Center. The videotape showed the stepdaughter saying she did not make any complaint of the sexual abuse earlier because when Malloy was out of town she did not have to care for younger children in the family, and Malloy had broken a promise to her that she could go out of state and spend time with a friend. As rebuttal, the State introduced and showed the balance of the videotape. Portions of the videotape introduced by the State in evidence show Malloy had a problem with alcohol, and had been in treatment, and had been in jail twice.

On appeal, appellate counsel, who Malloy now claims was not effective, raised the sole issue of whether the trial court abused its discretion in allowing the State to introduce the balance of the videotape. Malloy's conviction was affirmed by a four-justice panel of the supreme court in a per curiam opinion finding the district court did not abuse its broad discretion by admitting the entire videotaped interview once Malloy introduced part of the videotape, and the State was entitled to introduce the result of the videotape under Iowa Rule of Evidence 106(a).

Subsequently, Malloy filed an application for postconviction relief under Iowa Code chapter 663A. An attorney was appointed for him and the attorney recast his application alleging Malloy was denied the right to effective assistance of counsel. Malloy specifically alleged trial counsel was not effective because he did not have an independent medical expert examine the victim; the deposition testimony of Ingram was not introduced and trial counsel failed to interview and call two witnesses; his trial counsel directed him to lie about his use of condoms; and his trial counsel did not properly cross-examine the State's witnesses about their alleged prior inconsistent statements. Malloy also contended he was denied effective assistance of appellate counsel.

We review de novo. *Polly v. State,* 355 N.W.2d 849, 854 (Iowa 1984); *Taylor v. State,* 352 N.W.2d 683, 684 (Iowa 1984).

■ The State first advances Malloy's claims of ineffective assistance of trial counsel raised in this appeal were not preserved for appeal. It is conceded no claim of ineffective assistance of trial counsel was raised in Malloy's direct appeal. Issues not raised

on direct appeal are not preserved for post-conviction proceedings unless a defendant can show good cause for the failure to raise them. *Polly,* 355 N.W.2d at 855–56.

Malloy asserts the issues not raised were not raised on direct appeal because his appellate counsel was not effective. If this is true, then the failure to raise the issues on direct appeal is not fatal to Malloy's claims.

To prevail on an ineffective assistance of counsel claim, the defendant, in a criminal action, must show his attorney failed to perform an essential duty and as a result of the failure, he or she was prejudiced. *See State v. Miles,* 344 N.W.2d 231, 233–34 (Iowa 1984). There is a presumption an attorney offers reasonable professional assistance and is functioning as "counsel" guaranteed by the Sixth Amendment. *See Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

To meet the burden of showing his attorney was not effective, Malloy must show first there was a breach of an essential duty and he was prejudiced by the breach, in that, there is a reasonable probability, that but for the breach, the result of the proceedings would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *State v. Hildebrant,* 405 N.W.2d 839, 841 (Iowa 1987). To meet his burden in this case, Malloy must show there was a breach by both his trial and appellate counsel and he was prejudiced in each case.

■ We first address Malloy's claim his trial counsel was ineffective for introducing portions of the videotape because, in doing so, the whole videotape was admitted and the videotape was prejudicial. Malloy contends his appellate counsel was ineffective for not challenging the ineffectiveness of his trial attorney in doing so. Malloy contends the issue of admissibility of the whole videotape after a portion was admitted is well settled and his trial attorney should have known this as should his appellate attorney and their failure to treat this issue properly prejudiced him.

Iowa Rule of Evidence 106(a) provides, in applicable part:

(a) When an act, ... or recorded statement, or part thereof, is introduced by a party, any other part or any other act, ... or recorded statement is admissible when necessary in the interest of fairness, a clear understanding, or an adequate explanation.

(b) Upon request by an adverse party, the court may, in its discretion, require the offering party to introduce contemporaneously with the act, ... or recorded statement, or part thereof, any other part or any other act, ... or recorded statement which is admissible under subdivision "a" of this rule.

We agree with Malloy, the law is clearly settled, if a portion of a recorded statement is admitted, the balance is admitted both where necessary for fairness and a clear understanding and adequate explanation of the recording; we also agree, in addition, the trial court has discretion to order the offering party to admit the entire statement.

Trial counsel, therefore, in seeking to admit only portions of such a recording, must consider the implications to the case if the entire or larger portions of the recording are admitted under Iowa Rule of Evidence 106.

Appellate counsel argued, in attempting to show an abuse of the trial court's discretion, the videotape had a devastating effect on the trial because the portions admitted by the State revealed Malloy's alcoholism, including his being institutionalized for treatment that was not successful, and showed Malloy was a bad person and this affected the jury's perception of his credibility. Therefore, we agree with Malloy, his appellate counsel recognized the prejudice he suffered in the admission of the evidence. However, we need go further to determine whether the admission of that part of the videotape that showed reasons for the stepdaughter to make the complaint was of more value to Malloy's case than the prejudicial evidence was detrimental.

Malloy contends the portion of the videotape his trial counsel admitted was not of sufficient value to risk the prejudice of the admission of the balance of the videotape. He contends on cross-examination his stepdaughter admitted to basically the same evi-

dence, that is, she was left with child care responsibilities while he pursued recreational activities and that upset her and she blamed Malloy for this as well as the fact she was grounded on numerous occasions and not able to participate in extracurricular activities and had to cancel the trip out of state.

The State advances this call by Malloy's trial counsel was a reasonable call. Malloy's trial counsel testified the theory employed for defense was the stepdaughter had not been abused, she was not bright, but manipulating, and she hated Malloy because she felt he was not fair in his discipline and he was the one who required her to assume the child care responsibilities and did not allow her to participate in extracurricular activities and the allegations of abuse surfaced shortly after he prevented her from taking the out-of-state trip. And the stepdaughter wanted Malloy out of the house.

At the postconviction hearing, Malloy's trial counsel said he sought to admit portions of the videotape because it was the stepdaughter's first interview and she came across as not being traumatized and, while she cried at trial while on the witness stand, she did not cry in the videotape and she stated a number of times about her dislike of Malloy and how she blamed him for her child care responsibilities, not being able to take the out-of-state trip, and unfair discipline and how those things made her want to tell. While at trial, she said the only reason she did not tell earlier is because she is afraid of Malloy.

While we find this to be a very close question of whether the benefits of part of the videotape outweigh the prejudice of the balance, we find the decision a tactical decision made by trial counsel after adequate consideration of all factors and the fact it may not have succeeded as planned does not mean counsel was ineffective. We determine Malloy has failed to show his trial counsel ineffective on this issue. Therefore, we need not address the issue of appellate counsel's not challenging trial counsel's effectiveness on this issue.

█ Malloy's next claim is trial counsel should have asked for a medical examination of the stepdaughter and should have introduced the deposition of Dr. Ingram.

Malloy's trial counsel testified the defense was based in part on the theory the stepdaughter had never been sexually abused by Malloy, and Malloy had never had intercourse with her as she testified he had. Dr. Opdebeeck, a developmental pediatrician, examined the stepdaughter. Opdebeeck testified the stepdaughter's hymen was intact and a microscopic examination of her hymenal area revealed no scarring or tears. Opdebeeck testified there could be an intact hymen in a child who had been penetrated ten times but, the more often a child is penetrated, the less likely it is the hymen will remain intact; although, an intact hymen would still be medically possible. She said the absence of scars and tears to the hymen was not inconsistent with sexual abuse and not every child who has been fully penetrated will have scars and, if penetration is gentle and the opening is large enough to admit whatever is penetrating, the hymen might not tear. Opdebeeck also testified, if penetration is very rough, it is more likely there would be noticeable damage to the hymen and the hymen tears and shows signs of damage reasonably easily.

The focal point of Opdebeeck's testimony was the significance of the hymenal orifice being enlarged. She said the hymen easily admitted her two fingers with room to spare and it also admitted a speculum. Opdebeeck also said the stepdaughter did not complain of pain when she performed the speculum and finger penetration. She said the enlarged hymenal orifice is associated with those children who have been penetrated and, therefore, have been sexually abused.

Opdebeeck also testified, "In most thirteen-year-old children, who would be [the stepdaughter's] age of sexual maturity, I have never been able to admit a speculum unless that child's orifice has been enlarged. Usually, you can just about admit one of my fingers, but usually they will complain of pain on doing that. In [this] case, I could admit two fingers with some room to spare, and she did not complain of any pain at any time doing that." Opdebeeck also was asked and answered:

Q. And in your experience, is there any kind of association between an enlarged hymenal orifice as you saw in [this] case and sexual abuse? A. Yes.

Q. And what is that association in your experience? A. That those children have been penetrated and, therefore, have been sexually abused.

Q. During your genital examination, Doctor, did you observe any other physical signs that [the child] had been subjected to sexual abuse? A. She did have a lax pubococcygeus muscle. The pubococcygeus muscle is the muscle between the vagina and the rectum. In general, in young girls, especially teenagers who are pretty active and in good physical shape, that muscle is pretty tight. Usually you see pubococcygeus laxity in either children who are hypotonic, which means that they're floppy all over, or in children who have been penetrated on a repeated basis, because some of those muscle fibers get stretched and torn and causes that muscle to become lax.

Q. So the laxity in this muscle that you saw or observed could be explained two different ways, either, one, that she had been penetrated on a repeated basis or that, number two, she was a ... A. Hypotonic, and that just means that her tone all over was lower and that, therefore, that sign is nothing that you can look at.

Q. So what did you conclude, then, by observing that particular muscle? A. Though it is not a sign that's diagnostic of sexual abuse, I felt that it was consistent with the other findings that we were looking at.

Malloy contends Ingram's deposition would have been helpful, most particularly, with evidence that studies show the hymen was ruptured sixty-two percent of the time where there was sexual abuse. Ingram also said there are not standards for telling if a girl is a virgin with any medical certainty and once they are in Tanner Stage III[1] and up, there are no standards. And once their hymen becomes estrogenized, it becomes more diffi-

cult to say if they are a virgin or not because they can have had sexual intercourse and leave no findings and they do not know what size vaginal opening or hymenal opening these older girls can have and be normal. Ingram said their gynecologists have examined nuns and found large vaginal openings and the nuns say they had never had sexual intercourse. He further said it was controversial if there was any medical certainty in findings regarding supposedly sexually abused children and normal children.

Ingram was also asked about Opdebeeck's report that indicated her findings are consistent with apparent sexual activity. He said there is a difference between "consistent with" and "diagnostic of." Ingram said "diagnostic of" would mean there would be a one hundred percent medical certainty and gave as an example, finding semen in the child or gonorrhea or chlamydia, vaginal infection or syphillis that was not acquired in the newborn period that would be diagnostic of sexual abuse. Ingram went on to say "consistent with" means it could go along with a history of sexual abuse and essentially anything except an imperforate hymen can go along with history of sexual abuse.[2] He went on to explain there can be a normal examination when the child has been sexually abused, or there can be a very abnormal examination when the child has been sexually abused and almost anything is consistent with sexual abuse as long as there is an opening into the vagina. He further said there are no standards and the important thing is whether the history is believable and almost any finding as long as there is an opening into the vagina can be consistent with sexual abuse. Ingram also testified one of the things he relied on in giving his testimony was a study done by Teizeira in *The American Journal of Forensic Medicine & Pathology*, Volume 2, page 209 (1981).

Ingram also quoted an article by Dr. Krugman, who Ingram cited as being a respected teacher and expert in child sexual abuse who wrote an editorial in *The Child Abuse/Neglect Journal*, Volume 13, (1989), and said people should not be found guilty of sexual

---

1. Opdebeeck testified the stepdaughter was in Tanner Stage III.

2. Ingram defined an imperforate hymen as where there is no opening into the vagina at all.

abuse simply based on a vaginal opening of over four millimeters or a notch at six o'clock, which are two findings that have been researched.

Ingram also said he had not been able to find any studies that put any significance on the size of the vaginal canal and, while that finding might be used to corroborate a medical history; it cannot be said it is related in any percent to sexual intercourse, and no study on this has been done.

Malloy contends the deposition evidence would have been helpful to his position.

Clearly, the testimony would create a fact question about whether Opdebeeck's opinion the child, with a hymen stretching like the stepdaughter, had been sexually abused was a valid conclusion. Also, it would create a fact question about whether Opdebeeck's opinion the stepdaughter had "a lax pubococcygeus muscle" was any evidence of abuse.

Defense counsel testified as to his strategy for not introducing Ingram's deposition. He stated Ingram's testimony was there is not always physical evidence or rupture of the hymen and scarring of the tissues where there is sexual abuse, he could not give an opinion on whether the stepdaughter's history was credible and he concluded a vaginal opening in excess of four millimeters is highly associated with sexual contact in children less than thirteen,[3] and he, also, said an enlarged vaginal opening was more common in someone who had sexual intercourse but he could not tell how much more common.[4]

There clearly could have been valid arguments for introducing the deposition, particularly, because it challenged two of Opdebeeck's significant findings. The deposition also supported Opdebeeck's conclusion a child with an intact hymen could have had sexual intercourse.

While the decision made did not result in the jury accepting Malloy's position no sexual abuse occurred, we cannot say it was not a reasonable decision on the part of the trial counsel. Having so decided, we need not

address the claim appellate counsel was ineffective in failing to raise this issue on appeal. We affirm.

**AFFIRMED.**

---

3. Ingram said, however, he would be very careful in trying to apply that to a postpubertal child based on the very small number of postpubertal children we probably had in our study.

4. Ingram also had some question in analyzing Opdebeeck's finding because he was unsure how she had measured the vaginal opening.